**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

ZACHARY MUNRO and JUSTIN SCHMIED, on behalf of themselves and all others similarly
situated,

      Plaintiffs,

v.

HOMERUN ELECTRONICS, INC., a Colorado corporation;
IWIRED, INC., a Nevada corporation;
VANGEO COMMERCIAL GROUP, LLC, an Arizona limited liability company;
VANGEO TECHNOLOGY GROUP, LLC, an Arizona limited liability company;
MICHAEL L. VANN, an individual;
JOHNATHAN GEORGE, an individual; and
MARGARET GEORGE, an individual;

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

    Plaintiffs Zachary Munro ("Munro") and Justin Schmied ("Schmied") (together

"Plaintiffs"), on behalf of themselves and all others similarly situated, by and through Leventhal

Swan Taylor Temming PC, complain as follows:

**NATURE OF THE ACTION**

    1.    This action is brought on behalf of all piece-rate employees [1] holding comparable

positions with different titles ("Piece-Rate Employees")[2] employed by HomeRun Electronics, Inc.

("HRE"), iWired, Inc. ("iWired"), Vangeo Commercial Group, LLC ("VCG"), Vangeo

---

[1] See 29 C.F.R. § 778.111.

[2] Defendants employed similarly situated Piece-Rate Employees in numerous roles including
"cable installer," "installer," "electrician," and others.

Technology Group, LLC ("VTG") (together the "Entity Defendants"), Michael L. Vann ("Mr. Vann"), Johnathan George ("Mr. George"), and Margaret George ("Ms. George") (together the "Individual Defendants") (the "Entity Defendants" and "Individual Defendants" together as "Defendants") in the United States during the last three (3) years, plus any period of tolling, and who were not properly paid regular or overtime wages.

2.      This case is brought as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") of 1938 including the Portal-to-Potal Act of 1947, 29 U.S.C. §§ 251, et seq. Plaintiffs allege that Defendants violated the FLSA, 29 U.S.C. §§ 201 et seq. by failing to pay Piece-Rate Employees required overtime compensation. Plaintiffs allege that Defendants violated the Portal-to-Potal Act, 29 U.S.C. §§ 251, et seq. by failing to pay Plaintiffs and Piece-Rate employees for compensable pre- and post-shift work activities.

3.      This case is also brought as a class action under Fed. R. Civ. P. 23 pursuant to the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR § 1103-1, and the Colorado Wage Act ("CWA"), C.R.S. § 8-4-101. Plaintiffs allege that Defendants violated the COMPS Order by failing to pay Piece-Rate Employees minimum wages and overtime compensation at applicable rates required by law. Plaintiffs allege that Defendants violated the COMPS Order and CWA by failing to pay all earned regular and overtime wages including non-piece-rate working time and unpaid pre- and post-shift work.

**JURISDICTION AND VENUE**

4.      This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege claims under the FLSA including the Portal-to-Potal Act.

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the FLSA and Portal-to-Portal

Act claims that they form part of the same case or controversy.

6.    Defendant HRE is subject to personal jurisdiction in this District because it is a Colorado corporation. HRE is registered as a Colorado corporation, maintains its headquarters and primary office in this District, avails itself of the privilege of conducting substantial business in this District, and is otherwise at home in this District. HRE owns and operates locations in Colorado Springs and Denver.[3] HRE also owns and operates two locations in Arizona (i.e., Phoenix and Prescott)[4] where it is registered as a foreign corporation. HRE owns and operates its Arizona locations in concert with the other Defendants.

7.    Defendant iWired is subject to personal jurisdiction in this District because it avails itself of the privilege of conducting substantial business in this District and is otherwise at home in this District. iWired owns and operates a location in Denver, Colorado located at 10500 E 54th Avenue.[5] iWired is registered to conduct business in Colorado as a foreign corporation. iWired employs dozens of Piece-Rate Employees and other employees in Colorado. iWired's Colorado location has generated millions of dollars in revenue over the last three years.

8.    Defendant VCG is subject to personal jurisdiction in this District. VCG avails itself of the privilege of conducting substantial business in this District and is otherwise at home in this District. VCG is a parent company of HRE and iWired, both of which operate in this District. VCG was formed in September 2024 to facilitate the merger of HRE and iWired. VCG is registered to conduct business in Colorado as a foreign limited liability company. VCG and its officers (i.e.,

---

[3] https://hrenow.com/commercial-contacting-homerun-electronics/ (last accessed May 14, 2025); See Exhibit 1.

[4] https://hrenow.com/commercial-contacting-homerun-electronics/ (last accessed May 14, 2025); See Exhibit 2.

[5] See Exhibit 3.

Mr. Vann and Mr. George) direct the activities of both HRE and iWired through VCG. VCG derives substantial revenues from its ownership and operation of both HRE and iWired.

9.      Defendant VTG is subject to personal jurisdiction in this District. VTG conducts avails itself of the privilege of conducting substantial business in this District and is otherwise at home in this District. VTG is a parent company and owner of HRE and iWired, both of which operate in this District. VTG was formed in August 2023 to facilitate the merger of HRE and iWired. VCG and its officer (i.e., Mr. George) direct the activities of both HRE and iWired through VTG. VTG derives substantial revenues from its ownership and operation of both HRE and iWired.

10.      Mr. Vann is subject to personal jurisdiction in this District because he is a domiciliary of this District, avails himself of the privilege of conducting substantial business in this District, and is otherwise at home in this District. Mr. Vann is the President, Chief Operating Officer ("COO"), and a director of HRE. He is also a member of VTG.

11.      Mr. George is subject to personal jurisdiction in this District. Mr. George is the Chief Executive Officer ("CEO") of iWired, a manager of VTG, and the sole managing member of VCG. Within these roles, Mr. George avails himself of the privilege of conducting substantial business in this District through HRE and iWired and their parent companies and is otherwise at home in this District.

12.      Ms. George is subject to personal jurisdiction in this District. Ms. George is the President of iWired. Within this role, Ms. George avails herself of the privilege of conducting substantial business in this District through HRE and iWired [6] and is otherwise at home in this District.

---

[6] Both of which operate in this District.

13.     HRE and iWired are "sister brands." [7] HRE and iWired merged in approximately

August 2023 and are one in the same.[8] The merger resulted in the creation of VTG and VCG both

of which collectively own and operate HRE and iWired.[9] The Individual Defendants work in

concert to operate the Entity Defendants.

14.     All Defendants are subject to personal jurisdiction in this District because this

action arises out Defendants' illegal pay practices that caused damage to employees in the State of

Colorado and across the United States.

15.     All Defendants have availed themselves of the privilege of conducting substantial

business in numerous states, including Colorado, where Plaintiffs reside and work(ed) for

Defendants and certain of the acts and omissions alleged herein arise out of Defendants' activities

in Colorado.

### THE PARTIES

16.     Plaintiffs are, and were at all times relevant to this action, adult individuals

domiciled in Colorado.

17.     Defendant HRE is a Colorado corporation. HRE maintains its principal place of

business at 6380 Corporate Centre Circle, Suite 155, Colorado Springs, Colorado 80919. HRE is

registered in Colorado as a domestic corporation. HRE is registered as a foreign corporation in all

other states in which it operates outside of Colorado (i.e., Arizona).

18.     iWired is a Nevada corporation. iWired maintains its principal place of business at

---

[7] See Exhibit 2.

[8] https://www.cepro.com/news/integrators-iwired-homerun-electronics-merge-vangeo-
technology-group/132850/ (last accessed May 14, 2025).

[9] https://constructioninfocus.com/2025/03/iwired-homerun-electronics/ (last accessed May 14,
2025).

16573 N. 92nd Street, Suite 101-C, Scottsdale, Arizona 85260. iWired is registered in Nevada as a domestic corporation. iWired is registered as a foreign corporation in all other states in which it operates outside of Nevada (i.e., Arizona and Colorado).

19.     VCG is an Arizona limited liability company. VCG maintains its principal place of business at 16573 N. 92nd Street, Suite 101-C, Scottsdale, Arizona 85260. VCG is registered as a domestic limited liability company in Arizona. VCG is registered as a foreign limited liability company in all other states in which it operates outside of Arizona (i.e., Colorado).

20.     VTG is an Arizona limited liability company. VTG maintains its principal place of business at 16573 N. 92nd Street, Suite 101-C, Scottsdale, Arizona 85260. VTG is registered as a domestic limited liability company in Arizona.

21.     iWired, VCG, and VTG all operate out of the same office suite in Scottsdale, Arizona.

22.     HRE and iWired are sister brands and are one in the same. See Exhibit 2. HRE and iWired "service their existing clientele on a day-to-day basis as wholly owned subsidiaries" of VTG.[10] The websites for each of HRE and iWired state that each business is "A Vangeo Technology Group Company." See Exhibits 3-4.

23.     Mr. Vann is the founder, president, former CEO, and current COO of HRE. [11] Mr. Vann is both the COO and a member of VTG. Mr. Vann oversees operations of all Entity Defendants including business strategy and development, compliance, investor relations, and budgeting. He is also responsible for related executive functions. Mr. Vann was and is vested with

---

[10] https://www.cepro.com/news/integrators-iwired-homerun-electronics-merge-vangeo-technology-group/132850/ (last accessed May 14, 2025).

[11] See Exhibit 5.

the authority to carry out the wage and hour policies of the HRE and iWired.

24.     Mr. George is the Chief Executive Officer ("CEO") of iWired, both the CEO and a member of VTG, and the sole managing member of VCG.[12] Mr. George oversees operations of all Entity Defendants including business strategy and development, compliance, investor relations, and budgeting. He is also responsible for related executive functions. Mr. George was and is vested with the authority to carry out the wage and hour policies of HRE and iWired.

25.     Ms. George is the President of iWired.[13] Ms. George oversees operations of iWired including business strategy and development, compliance, investor relations, and budgeting. She is also responsible for related executive functions. Ms. George was and is vested with the authority to carry out the wage and hour policies of iWired. Upon information and belief, Ms. George also possesses significant input into the operations and employment practices of iWired's sister brand, HRE.

26.     Defendants are primarily in the business providing installation of audio-visual, home theatre, cable/internet, smart home automation, and other related home electronic products and systems (e.g., motorized window treatments, lighting, home security, and "central vacuums").[14] Defendants serve corporate home builders (e.g., new-build construction sites), commercial customers (e.g., office spaces), and individual residential customers.[15]

27.     Defendants are joint employers as defined by the FLSA. Defendants: merged their

---

[12] See Exhibit 6.

[13] See Exhibit 7.

[14] https://hrenow.com/; https://hrenow.com/commercial/; https://iwired.com/our-services/ (last accessed May 14, 2025).

[15] https://hrenow.com/; https://hrenow.com/commercial/; https://iwired.com/our-services/ (last accessed May 14, 2025).

businesses into a single operation; created related parent companies to facilitate joinder of entities; join in operations; consolidate ownership; share common officers and executives (i.e., Mr. Vann and Mr. George); work in concert to control the employee-employer relationship; and act directly or indirectly in relation to job duties and pay of Piece-Rate Employees including Plaintiffs.

28.    Through the entire relevant period, each of the separate entities comprising Defendants exercised total control as to Plaintiffs' employment status, schedules and conditions of employment, rates, methods of payment, and records.

29.    Because Defendants are joint employers as defined by the FLSA and applicable law, the Entity Defendants and Individual Defendants are jointly and severally liable to Plaintiffs and all other Piece-Rate Employees under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

30.    Plaintiffs seek to prosecute their FLSA claim as an "opt-in" collective action on behalf of all persons who are or were employed by Defendants as Piece-Rate Employees in the United States (i.e., Colorado and Arizona) at any time in the last three (3) years, plus any period of tolling, through the entry of judgment in this case and who were not paid overtime for all hours worked in excess of 40 in a work week ("Collective").

31.    Plaintiffs will fairly and adequately protect the interests of the members of the Collective and have retained counsel who are experienced and competent in the fields of wage and hour law and collective action litigation. Plaintiffs have no interests contrary to or in conflict with the members of the Collective.

32.    The members of the Collective are similarly situated because, among other things, they were all victims of the same company-wide policies and procedures that failed to pay them all the wages to which they are entitled under the FLSA.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs sue on their own behalf and on behalf of a class of employees under Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure based on Defendants' violations of the COMPS Order and the CWA.

34.     Plaintiffs bring their Colorado state law claims on behalf of all employees who were employed by Defendants in Colorado as Piece-Rate Employees at any time in the last three (3) years, plus any period of tolling, through the date of the entry of judgment in this case who hold or held the position of Piece-Rate Employee and were not paid (a) minimum wages required by law, (b) regular straight time wages for non-piece rate work (e.g., pre- and post-shift warehouse activities, drive time, inspections/walk-throughs, ram-setting, time worked through meals, etc.) worked below, at, or above 40 hours in a work week, and (c) overtime compensation for all hours worked including hours in excess of 40 in a work week and/or 12 in a work day (i.e., piece-rate and non-piece-rate work) ("Wage Class").

35.     The members of the Wage Class are so numerous that joinder of them is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are hundreds of members of the Wage Class.

36.     Plaintiffs' claims are typical of the claims of the members of the Wage Class. Plaintiffs performed the same essential job duties as the members of the Wage Class; Defendants paid Plaintiffs and the members of the Wage Class pursuant to the same policies and procedures; and Plaintiffs and the members of the Wage Class were victims of the same wrongful conduct in which Defendants engaged in violation of the COMPS Order and the CWA.

37.     The class action mechanism is superior to any alternatives which may exist for the

9

fair and efficient adjudication of this cause of action. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which injured parties can effectively litigate against corporate defendants like Defendants. Numerous repetitive individual actions would also place an undue burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to Defendants' conduct.

38.     Defendants have acted or refused to act on grounds generally applicable to the Wage Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Wage Class as a whole.

39.     Plaintiffs are committed to pursuing this action and have retained competent counsel who are experienced in wage and hour law and class action litigation.

40.     Plaintiffs will fairly and adequately protect the interests of the members of the Wage Class.

41.     There are questions of law and fact common to the Wage Class which predominate over any questions solely affecting the individual members of the Wage Class including but not limited to:

    a.  Whether Defendants employed the members of the Wage Class within the meaning of the COMPS Order and the CWA;

    b.  Whether Defendants' policies and practices described within this Complaint are illegal;

c.  Whether Defendants properly paid the members of the Wage Class for all hours, including hours worked below, at, and beyond 40 hours in a work week and/or 12 hours in a work day;

d.  Whether Defendants properly tracked and/or calculated the number of regular and overtime hours payable to the members of the Wage Class based on their work below, at, and beyond 40 hours in a work week and/or 12 hours in a work day;

e.  What proof of hours worked is sufficient where, as here, Defendants failed in their duty to keep and maintain accurate time records; and

f.  Whether Defendants are liable for all damages claimed hereunder.

## STATEMENT OF FACTS

42.     Defendants own, operate, and manage businesses which provide installation of audio-visual, home theatre, cable/internet, smart home automation, and other related home electronic products and systems. Defendants serve corporate home builders (e.g., Classic Homes, David Weekley Homes, Oakwood Homes, Toll Brothers, American Legend Homes, and Vantage Homes), commercial customers (e.g., companies, office spaces), and individual residential customers (e.g., large-scale remodeling, basements).

43.     Piece-Rate Employees follow standardized processes involving well-established policies and procedures implemented by Defendants and they work within closely prescribed limits imposed by Defendants. Defendants employ all Piece-Rate Employees and establish their pay practices.

44.     Piece-Rate Employees are classified as non-exempt employees and are paid by piece-rate instead of by the hour.[16] Piece-Rate Employees worked pursuant to at least two different

---

[16] See 29 C.F.R. § 788.111.

pay rates—piece-rate and non-piece-rate.[17] Defendants (a) failed to pay Piece-Rate Employees for any non-piece-rate work activities, (b) failed to pay Piece-Rate Employees mandated minimum wages, and (c) failed to pay overtime wages for hours worked over 40 in a work week or 12 in a work day over and above the piece-rate wages.

45.    Defendants have employed Munro as an installer since approximately August 2020. Munro works at Defendants' Colorado Springs, Colorado location. Munro sometimes works out of Defendants' Denver location.

46.    Munro was paid by the hour from approximately August 2020 to late 2022 or early 2023 when Defendants switched to its current piece-rate compensation structure.[18] Munro is currently paid by piece-rate. Defendants never disclosed to Munro the specific piece-rate schedule by which he is paid. Munro believes that certain installation tasks pay him between $5.50 and $7.50 each. Munro regularly works at least 45 hours per week. At times, Munro worked between 60 and 80 hours per week. Munro does not receive overtime pay.

47.    Schmied worked for Defendants as an installer from approximately March 2024 to October or November 2024. Schmied worked at Defendants' Colorado Springs, Colorado location. Schmied sometimes worked out of Defendants' Denver location.

48.    Schmied was paid by piece-rate. Defendants never disclosed to Schmied the specific piece-rate schedule by which he is paid. Schmied believes that certain installation tasks pay him between $5.50 and $7.50 each. Schmied regularly worked at least 45 hours per week. Schmied did not receive overtime pay.

---

[17] See 29 C.F.R. § 778.115.

[18] Defendants' transition to piece-rate pay from standard hourly pay occurred around the same time HRE and iWired merged and VCG and VTG were formed.

49.     Upon information and belief, Defendants derived employees' piece-rate compensation from customer work orders and blueprint specifications. Plaintiffs were not privy to other details of the piece-rate compensation structure.

50.     Plaintiffs' job duties included a variety of construction work, installation tasks, and electrical work. Plaintiffs installed cable and internet wiring and other audio-visual and home security components into homes. Most of Plaintiffs' duties comprised of "rough-in" work.[19] Plaintiffs mostly serviced new-build construction sites but at times responded to and performed work for Defendants' commercial and individual residential customers.

51.     Defendants controlled Plaintiffs' work assignments and set their schedules. Plaintiffs nearly always worked more than their assigned schedules. Plaintiffs regularly worked 10-12 or more hours in individual work days. Plaintiffs were required to work before and after assigned shifts at Defendants' specific direction. Plaintiffs were required by Defendants to work more than 40 hours each week based on the demands of Defendants' business.

52.     Plaintiffs were required to perform certain pre-shift duties for which they were not paid. Before each shift, Plaintiffs were required to first report to Defendants' warehouses for daily meetings, instructions, work assignments, and to locate their assigned company vehicle. Plaintiffs were then required to load the vehicles with supplies before heading to their first work site. Plaintiffs were not compensated for any of this pre-shift work including time spent at the warehouse and the time spent driving from the warehouse to the fist work site. Plaintiffs were similarly not paid for drive time between work sites during their shifts.

53.     Plaintiffs were only paid for some of the work performed at job sites—namely work

---

[19] "Rough-in" refers to the stage of a construction project when the various mechanical, electrical, and plumbing lines are installed.

designated as "piece-rate." For example, Plaintiffs were paid $5.50 for installing a single wire between a wall and electric panel and $7.50 for two installing two wires between the same. These rates were not adjusted for duration, degree of difficulty, or any other metric.

54.     Plaintiffs were not paid overtime wages for hours worked over 40 in a work week or 12 in a work day. Defendants failed to pay Plaintiffs and other Piece-Rate Employees the additional half-time rate for overtime hours worked.

55.     Plaintiffs were also required to perform certain post-shift tasks for which they were not paid (e.g., post-shift meetings, vehicle maintenance, inventory, travel from last worksite back to warehouse, etc.).

56.     Plaintiffs were never paid for non-piece-rate work. Defendants told Plaintiffs that they would not be paid for warehouse work, travel time, and non-piece-rate work at job sites. Plaintiffs were also not paid within the piece-rate compensation structure for work site tasks including inspections; walk-throughs; ram-setting; and other construction and installation work that was not specifically stated in a work order or blueprint. Plaintiffs were also not paid when they were required to return to a job site to repair, re-do, or add on to previous work (e.g., repairs mandated by city inspectors or construction superintendents). These tasks were compensable within the scopes of Plaintiffs' jobs but were not paid. Plaintiffs' non-piece-rate hours typically exceeded 40 in a work week such that those hours were due at the applicable overtime rate of pay. Plaintiffs are owed the entire 1.5x rate for unpaid non-piece-rate hours worked.

57.     At times, Plaintiffs were asked to perform other work-related tasks away from the warehouse or job sites. For instance, Munro was required to change vehicle tires and take vehicles to mechanics for repair but was not paid for this work even though it was reported to Defendants.

58.     Plaintiffs and Piece-Rate Employees were sometimes paid less than the required

minimum wage established by the COMPS Order and/or FLSA. For instance, Schmied was paid

a mere $782.50 in piece-rate wages for a two-week pay period ending August 9, 2024. Schmied's

regular rate for that week (assuming 40 hours each week) was $9.78.   [20] The Colorado minimum

wage in 2024 was $14.42.[21] Schmied's regular rate was nearly 1/3 less than Colorado's minimum

wage.

59.    Defendants used handwritten timesheets to track work time. Defendants used a

separate system and process to track piece-rate work and calculate piece-rate wages. Plaintiffs

were excluded from tracking and calculating piece-rate work and wages.

60.    Plaintiffs completed timesheets for each two-week pay period consisting of 13 or

14 days. Plaintiffs listed all job sites and all work hours including hours worked over 40 in a work

week or 12 in a work day even though they knew they wouldn't be paid for those hours.

61.    Defendants' timesheets were designed to discourage and prohibit Plaintiffs and

Piece-Rate Employees from recording overtime hours as the "O/T" column on the timesheet was

greyed out and labeled "Don't Use." Defendants later updated their timesheet but still prohibited

employees from recording overtime as well as "Arrival Time," "Departure Time," "Total Hours

Worked," "PTO," and "Holiday" by greying out the corresponding columns on the timesheet.

62.    Plaintiffs understood and had personal knowledge that HRE and iWired were sister

companies owned by VCG and/or VTG. Plaintiffs knew that Mr. Vann and Mr. George were the

owners of the Entity Defendants.

63.    Plaintiffs wore uniforms and used equipment which bore the names of both HRE

---

[20] The paystubs issued by Defendants for piece-rate work did not include figures in the "rate" or
"hours" columns which demonstrates that Defendants did not properly track or account for hours
worked by Piece-Rate Employees for purposes of calculating wages and overtime.

[21] https://cdle.colorado.gov/dlss (last accessed May 16, 2025).

and iWired without distinction. Plaintiffs have personal knowledge that HRE elected to stop using and purchasing cargo vans in favor of the small Nissan pickup trucks used by iWired.

64.     Defendants implemented these policies across all locations in the United States (i.e., Colorado and Arizona).

65.     Both Plaintiffs questioned Defendants' wage practices and raised concerns and complaints about the policies to Defendants to no avail.

66.     During Schmied's employment he made several verbal complaints about Defendants' wage practices to Field Manager Ben Stefano and Divisional Operations Manager Jeremy Cox.

67.     Munro raised several detailed written complaints to Defendants about their wage practices. Munro made an initial written complaint to Kelly Ann Barker of Defendants' Human Resources department on March 28, 2025 in an email titled "Homerun's Violation of FLSA." Munro complained about non-payment for non-piece-rate work. Munro informed Defendants that "this is not the first time that something like this has occurred."

68.     Munro further complained to Defendants that "[s]ince the start of the piece rate [compensation plan], [Defendants] have not been paying overtime, driving time, troubleshooting with [supervisors], waiting on clarification on job specifications … or loading warehouse product. Time spent doing non-piece-rate work must be paid at the agreed-upon hourly wage. [Defendants] told us that we do not track overtime hours and have greyed out the box on timesheets that enable employees to do so." Munro advised Defendants that their wage practices were "willful violation[s] of FLSA and considered to be wage theft." Ms. Barker replied and informed Munro that she had "added Johnathan [George] and Mike [Vann] to your email[.]"

69.     Munro submitted a second complaint on April 18, 2025. Munro stated that

Defendants failed to implement "new transparent procedures [which track] how all non-piece-rate

work should be accounted for and calculated." Munro informed Defendants that they had "not

fixed the timecards to allow [Piece-Rate Employees] to track overtime. The timecards still have

overtime greyed out. This alone is a willful act to deter [Piece-Rate] employees from tracking due

compensation."

70.    Munro informed Defendants that "[they] must first account for all non-piece-rate

work hours. All wages (piece-rate and hourly) [should be] added up and divided by hours per work

week. The overtime rate is based on that calculation, which changes each work week based on

each week's calculation. Please make sure all 3 years of piece-rate work are looked into and

accounted for, as there were times of heavy overtime and drivetime." Munro told Defendants that

"I can only see [Defendants' actions] as an ongoing continuation and willful violation of FLSA

laws regarding wages."

71.    Munro submitted a third written complaint on April 30, 2025. Mr. Vann and Mr.

George were copied on all emails concerning Munro's wage complaints between March 28 and

April 30, 2025.

72.    On May 5, 2025, an attorney for Defendants emailed Munro on Defendants' behalf

and confirmed that Defendants were "in receipt of many of your emails explaining your concerns."

Mr. Vann and Mr. George were copied.[22]

73.    Despite these numerous complaints by Plaintiffs, Defendants never changed their

pay practices.

---

[22] Mr. George was involved in wage complaints made by HRE employees in Colorado within his roles as CEO of iWired and VTG and managing member of VCG. Mr. George's involvement in wage complaints made by Colorado employees of the HRE branch of Defendants' business demonstrates his authority over Defendants' employment practices.

74.     Plaintiffs' job duties and tasks were highly regulated and controlled by Defendants on a step-by-step and incremental level. Plaintiffs and members of the Collective and Wage Class were prohibited from exercising discretion and independent judgment as to matters of significance within Defendants' operations.

75.     Plaintiffs and members of the Collective and Wage Class were directed by Defendants to strictly adhere to corporate policies implemented by Defendants.

76.     Plaintiffs and members of the Collective and Wage Class participated and engaged in essential job duties and tasks on a daily basis that directly related and contributed to Defendants' primary business of providing construction services to customers for profit.

77.     Defendants illegally applied their piece-rate wage policies as to Plaintiffs and members of the Collective and Wage Class.

78.     Plaintiffs piece-rate wages failed to satisfy Colorado's minimum wage requirements.

79.     Plaintiffs worked non-piece-rate hours every week but never received any compensation for such hours.

80.     Plaintiffs regularly worked more than 40 hours each week but never received overtime premiums at the legally required rates for hours worked over 40 in individual work weeks and/or 12 hours in a work day.

81.     Plaintiffs and all other Piece-Rate Employees were employed under identical or substantially similar terms. All Piece-Rate Employees were provided identical or substantially similar copies of offer letters, employee handbooks, and other employment documents at the start of their employment. The common terms of employment for Piece-Rate Employees, including the pay practices identified herein, were intentionally and purposefully made identical by Defendants.

82.    The uniform and common practices and policies implemented by Defendants, including the job duties and compensation structure, applied to all Piece-Rate Employees, including Plaintiffs.

83.    Defendants continue employ to members of the Collective and Wage Class as alleged herein.

84.    Plaintiffs and members of the Wage Class were entitled to the wage protections afforded by the CWA which apply to timely payment of all earned wages.

85.    Defendants failed to pay Plaintiffs and members of the Collective and Wage Class regular (i.e., non-piece-rate) and overtime wages.

86.    Defendants failed to pay Plaintiffs and members of the Collective and Wage Class earned non-piece-rate wages for certain hours worked below and up to 40 hours in a work week.

87.    Defendants have uniform policies and practices to not pay Piece-Rate Employees for all hours worked below at, and above 40 each work week and/or 12 work day at the legally required rates.

88.    Defendants' violations of the FLSA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay overtime compensation to Plaintiffs and members of the Collective.

89.    Defendants' violations of the CWA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay all earned wages to Plaintiffs and members of the Wage Class.

## **FIRST CLAIM FOR RELIEF**
### **FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION**

90.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

91.    At all relevant times, each Defendant has been, and continues to be, an employer

engaged in interstate commerce within the meaning of the FLSA.

92. At all relevant times, Defendants have had gross annual revenues in excess of $500,000.[23]

93. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each member of the Collective within the meaning of the FLSA.

94. At all relevant times, Defendants have had a uniform policy and practice to not pay overtime compensation for all overtime hours worked at legally mandated rates.

95. As a result of Defendants' failure to properly compensate their employees, including Plaintiffs and the members of the Collective, Defendants have violated, and continue to violate, the FLSA.

96. As employers within the meaning of the FLSA, Defendants have a duty to create and maintain accurate records of employee hours. Defendants failed to do so.

97. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

98. Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from Defendants unpaid overtime compensation, liquidated damages, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to 29 U.S.C. § 216(b).

---

[23] Upon information and belief, HRE and iWired combine for tens of millions of dollars in sales each year. See https://www.cepro.com/news/integrators-iwired-homerun-electronics-merge-vangeo-technology-group/132850/ (last accessed May 14, 2025).

## SECOND CLAIM FOR RELIEF
## COMPS ORDER – CLASS ACTION

99.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

100.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs

and members of the Wage Class within the meaning of the COMPS Order.

101.     Because Defendants were, at all relevant times, employers within the meaning of

the FLSA, they were also employers within the meaning of the COMPS Order pursuant to 7 CCR

§ 1103-7-2.7.

102.     Defendants violated the COMPS Order by failing to pay Piece-Rate Employees all

required minimum wages to which they are entitled.

103.     Defendants violated the COMPS Order by failing to pay Piece-Rate Employees all

overtime compensation to which they are entitled at the legally required rates.

104.     Under 7 CCR § 1103-5.1, employees are "entitled to an uninterrupted and duty-free

meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours."

105.     Defendants' failure and refusal to permit Plaintiffs and members of the Wage Class

to take uninterrupted meal breaks, as required by law, was in violation of the Meal and Rest Periods

provision of 7 CCR § 1103-5.1.

106.     Because Defendants did not permit Plaintiffs and members of the Wage Class to

take uninterrupted meal breaks, Plaintiffs and members of the Wage Class were required to work

through meals but were not compensated for that work time. Plaintiffs and the members of the

Wage Class are entitled to recover from Defendants unpaid wages resulting from work performed

during meal periods.

107.     Plaintiffs and the members of the Wage Class are entitled to recover from

Defendants unpaid minimum wages, unpaid regular non-piece-rate wages, and overtime

compensation at the appropriate premium for all hours worked over 40 in a work week and 12 in

a work day, any statutory penalties, Defendants' share of FICA, FUTA, state unemployment

insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of

this action pursuant to the COMPS Order.

## THIRD CLAIM FOR RELIEF
### COLORADO WAGE ACT – CLASS ACTION

108.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

109.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs

and the members of the Wage Class within the meaning of C.R.S. § 8-104-101(5).

110.    Because Defendants were, at all relevant times, employers within the meaning of

the FLSA, they were also employers within the meaning of the CWA pursuant to C.R.S. § 8-104-

101(6).

111.    The CWA defines wages as "[a]ll amounts for labor or service performed by

employees," regardless of whether "the amount is fixed or ascertained by the standard of time."

Wages, as defined by the CWA, are governed by the CWA once the amounts are "earned, vested,

and determinable." C.R.S. § 8-4-101(14)(a)(I)-(III).

112.    Plaintiffs and members of the Wage Class worked hours below or at 40 hours in

individual work weeks which were required to be paid at their regular hourly rates of pay. See

C.R.S. § 8-4-101(14)(a)(II)-(III).

113.    Plaintiffs and members of the Wage Class worked over 40 in individual work weeks

and/or 12 in a work day, which required pay at one-and-one-half (1.5) their regular hourly rates of

pay. See id.

114.    Once Plaintiffs and members of the Wage Class worked hours below, at, and above

40 in individual work weeks, they earned regular and/or overtime wages, although they were not

paid. Accordingly, any minimum, regular non-piece-rate, or overtime wages for which Plaintiffs and members of the Wage Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

115.    If an employer fails to pay an employee earned, vested, and determinable wages as set forth by the CWA within fourteen (14) days of service of a civil action, the employee is entitled to a penalty of two (2) times the amount of unpaid wages or compensation. See C.R.S. § 8-4-109(3)(b)(I).

116.    If the employee can prove that the employer's failure to pay wages due under the CWA was willful, the employee is entitled to a penalty of three (3) times the amount of unpaid wages or compensation. See id.

117.    Defendants' failure and refusal to pay earned  minimum, regular non-piece-rate, and overtime wages, as demanded herein within the fourteen (14) day period was willful and in bad faith. See id.

118.    Plaintiffs and members of the Wage Class are owed all earned, unpaid wages and statutory penalties, including increased penalties for willful violations of the CWA.

119.    Plaintiffs and members of the Wage Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA. See C.R.S. § 8-4-110.

<u>**PRAYER FOR RELIEF**</u>

Wherefore, Plaintiffs, on behalf of themselves and all other members of the Collective and Wage Class, requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the members of the Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly-situated members of the FLSA collective, apprising them of the pendency

of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the members of the Wage Class and appointing Plaintiffs and their counsel to represent the Wage Class;

c.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, COMPS Order, and CWA;

d.  An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the COMPS Order and CWA;

e.  An award of minimum wages due under the FLSA and the COMPS Order;

f.  An award of overtime compensation due under the FLSA and the COMPS Order;

g.  An award of unpaid, earned, and vested regular wages under the CWA;

h.  An award of liquidated damages and/or statutory penalties under the FLSA and CWA;

i.   An award of additional damages and/or statutory penalties under the FLSA and CWA because of Defendants' willful failure to properly pay regular and/or overtime compensation;

j.  An award of damages representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

k.  An award of pre-judgment and post-judgment interest at the maximum rate permitted by law;

l.  An award of costs and expenses of this action together with attorneys' and expert

fees; and

   m.  Such other and further relief as this Court deems just and proper.

Plaintiffs hereby demand a trial by jury

  Respectfully submitted this 16th day of May, 2025.

/s/ Samuel D. Engelson
Andrew E. Swan
Samuel D. Engelson
LEVENTHAL SWAN TAYLOR TEMMING PC
3773 Cherry Creek North Drive, Suite 710
Denver, Colorado 80209
Telephone: (720) 699-3000
Facsimile:  (866) 515-8628
Email:     aswan@lstt.law
          sengelson@lstt.law

Attorneys for Plaintiffs
